FILED                  BY
LODGED          RECEIVED

AUG 2 5 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                          DEPUTY

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

IN THE MATTER OF THE SEARCH OF:  )
APEXONLINEPHARMACY.COM,          )   MAG. NO.:  **14-1753 TJS**
WEBSITE DATA IN THE CUSTODY OF   )
FRANK JASON WILLETTS, OF         )
WILLETTS SYSTEMS, INC., AT       )
446 N. MECHANIC STREET,          )
CUMBERLAND, MARYLAND  21502      )

### AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Darcele A. Jones, being duly sworn, depose and state as follows:

### INTRODUCTION

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to the Washington Field Office, 601 4th Street NW, Washington, D.C. I have been a Special Agent since September 13, 2009, and have been assigned to work Health Care Fraud since that time. During my law enforcement career, I have participated in investigations involving health care fraud, bank fraud, wire fraud, bribery, and money laundering.

2.  Based on the facts set forth in this affidavit, your affiant submits that there is probable cause to believe that in the location of the business of Willetts Systems, Inc., at 446 N. Mechanic Street, Cumberland, Maryland (Garrett County), 21502, in the custody of Frank Jason Willetts, is all data associated with a now defunct website, known as apexonlinepharmacy.com. Mr.Willetts, who is involved only as a storage point for internet data, has told FBI agents that he is in custody of the data pertaining to that website, because he was hired as the website host provider when the website was operational.  Willetts Systems has in its possession all data associated with the website which is presently stored on a device called a "development server"

1

at 446 N. Mechanic Street, Cumberland, Maryland   (Garrett County), 21502.    The website was

and is now a target of an ongoing criminal investigation.  The website known as

apexonlinepharmacy.com operated as a rogue internet pharmacy in violation of 21 U.S.C.

§841(a)(1) and §829(e), and other offenses.

3. In a series of search warrants (Federal Rule of Criminal Procedure Rule 41 and 18

U.S.C. §2703(d)) of the website, law enforcement agents involved in an investigative task force

have ascertained that apexonlinepharmacy.com was an internet pharmacy owned and operated by

a District of Columbia licensed pharmacist known as Titilayo "Tomi" Akinyoyenu, of Apex Care

Pharmacy, 4047 Minnesota Avenue NE, Washington, DC  20019.  Data in the possession of

Frank Jason Willetts at the above location has the entire digital history of website computer

"screens," solicitations made, pharmaceutical orders placed and pharmaceutical drug orders

filled and shipped, including customers and addresses of customers who placed orders for

prescription required controlled substance and non-controlled drugs over the internet website.

This computerized data which is located as described above and recited in Attachment A to this

search warrant application, will uncover the evidence, fruits, and/or instrumentalities described

in Attachment B, relating to violations of  money laundering statutes under Title 18 U.S.C. §

1956, illegal shipment and distribution of drugs in violation of Title 21 U.S.C. § 841(a)(1),

illegal operation of an internet pharmacy in violation of 21 U.S.C. §829(e), and 846, conspiracy,

introduction of misbranded drugs into interstate commerce and conspiracy in violation of 21

U.S.C. §331(a), and conspiracy in violation of 18 U.S.C. §371, mail fraud in violation of Title 18

U.S.C. § 1341 and wire fraud in violation of Title 18 U.S.C. § 1343.

4.  The facts set forth in this affidavit are based on my personal knowledge and review of records, documents and other physical evidence obtained during this investigation, as well as information conveyed to me by other law enforcement officials.  All observations referenced in this affidavit that were not made by me were related to me by the person who made such observations.  Unless specifically indicated, all conversations and statements in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements.

5.  Further, the affiant relies upon and incorporates by reference the affidavit of Special Agent Gregg Domroe of the Federal Bureau of Investigation, in Search Warrant 10-284-M-01, issued by Magistrate Judge Alan Kay on May 26, 2010, U.S. District Court for the District of Columbia.  This is included to the affidavit as Exhibit I.

6.  After execution of a search warrant at Apex Care Pharmacy, 4047 Minnesota Avenue NE, Washington, DC  20019, on May 28, 2010, law enforcement officials gathered more evidence demonstrating that the website apexonlinepharmacy.com was operating out of the above location in D.C., and was filling prescription required orders by internet customers from all over the United States for controlled substances and non-controlled pharmaceuticals and that these customers  had placed and paid for such orders over  the website above, without establishing a legitimate doctor-patient relationship, and in violation of 21 U.S.C. §§ 841(a)(1) and 829(e),  and 21 U.S.C. § 331(a), among others.  A summary of the investigation to date reveals that over 38,000 orders were placed over the website apexonlinepharmacy.com and that these orders were illegally shipped and distributed to the customers without a valid prescription follows:

3

| DRUG DEFINITION IN DATABASE | NUMBER OF PILLS DISPENSED |
|---|---|
| CARISOPRODOL (SOMA, WATSON BRAND) 350MG TOTAL = | 73830 |
| CARISOPRODOL 350MG (WATSON) TOTAL = | 509190 |
| CARISOPRODOL 350MG TOTAL = | 456130 |
| FIORICET (GENERIC) 325MG (BLUE) TOTAL= | 31650 |
| FIORICET (GENERIC) 325MG (WHITE) TOTAL = | 20670 |
| FIORICET (GENERIC) 325MG TOTAL = | 300 |
| FIORICET (GENERIC) 325MG TOTAL = | 2970 |
| FIORICET (GENERIC) 50MG (BLUE) TOTAL= | 544260 |
| FIORICET (GENERIC) 50MG (WHITE) = | 411720 |
| SOMA (CARISOPRODOL WATSON BRAND) 350MG TOTAL = | 3090 |
| SOMA (GEN) 350MG (GENERIC) TOTAL = | 100050 |
| SOMA (GEN) 350MG WATSON TOTAL = | 125070 |
| SOMA (GEN) 350MG-GENERIC TOTAL = | 62520 |
| SOMA (GENERIC) 350MG TOTAL = | 4500 |
| SOMA (WATSON BRAND) 350MG TOTAL = | 151230 |
| SOMA 350MG (BRAND) TOTAL = | 1680 |
| SOMA 350MG (GENERIC) TOTAL = | 140610 |
| SOMA 350MG (GENERIC) TOTAL = | 135120 |
| SOMA 350MG (WATSON) = | 148740 |
| SOMA 350MG (WATSON) TOTAL = | 234840 |
| SOMA 350MG TOTAL = | 60 |
| SOMA 350MG TOTAL = | 390 |
| TRAMADOL 50MG TOTAL = | 959970 |
| ULTRAM (GENERIC) 50MG TOTAL = | 300 |

| | |
|---|---|
| ULTRAM (TRAMADOL MYLAN BRAND) 50MG TOTAL = | 700 |
| ULTRAM (TRAMADOL) 50MG TOTAL = | 11490 |
| ULTRAM GENERIC (TRAMADOL) 50MG TOTAL = | 332240 |

Further, during the first two weeks of June 2014, agents spoke with Frank Jason Willetts, who

runs a data systems company, and he stated that that he is in possession of the data associated

with the website known as apexonlinepharmacy.com, which is now defunct, because he and his

company were hired as the website host provider for that website when it was operational. He

also stated that the data is being stored by him at the offices of Willett Systems Inc., at the

location and place described above, and that he would hold the data for the FBI. This data is

evidence of a crime and is expected to contain an accurate record of all customers, all orders

placed by such customers, and pharmaceutical orders filled and shipped by this internet

pharmacy.

7.    This affidavit is not intended to include each and every fact relating to this

investigation. This affidavit only sets forth those facts necessary to support probable cause to

seize the data associated with apexoninepharmacy.com as evidence, fruits, and instrumentalities,

relating to violations of money laundering statutes under Title 18 U.S.C. § 1956, illegal shipment

and distribution of drugs in violation of Title 21 U.S.C. § 841(a)(1), illegal operation of an

internet pharmacy in violation of 21 U.S.C. §829(e), and 846, conspiracy, introduction of

misbranded drugs into interstate commerce and conspiracy in violation of 21 U.S.C. §331(a), and

conspiracy in violation of 18 U.S.C. §371, mail fraud in violation of Title 18 U.S.C. § 1341 and

wire fraud in violation of Title 18 U.S.C. § 1343

## CONCLUSION

8.  Based on the affidavit herein and the prior affidavit which is attached and incorporated by reference herein, there is probable cause to believe that APEX CARE PHARMACY, doing business as APEXONLINEPHARMACY.COM and its employees knowingly and willfully executed or attempted to execute a scheme or artifice to distribute controlled and non-controlled substances without the need of a prescription or a legitimate doctor patient relationship.  And there is probable cause to believe that the computerized data/records associated with this illegal internet pharmacy are located as described in Attachment A.

9.   Based on the foregoing information and upon my training, and experience in the investigation of pharmaceutical drug diversion, I believe that fruits, instrumentalities and evidence, as described in the Attachment B,  relating to violations of money laundering statutes under Title 18 U.S.C. § 1956, illegal shipment and distribution of drugs in violation of Title 21 U.S.C. § 841(a)(1), illegal operation of an internet pharmacy in violation of 21 U.S.C. §829(e), and 846, conspiracy,  introduction of misbranded drugs into interstate commerce and conspiracy in violation of 21 U.S.C. §331(a), and conspiracy in violation of 18 U.S.C. §371, mail fraud in violation of Title 18 U.S.C. § 1341 and wire fraud in violation of Title 18 U.S.C. § 1343, will be located at Willetts Systems, Inc., at 446 N. Mechanic Street, Cumberland, Maryland  (Garrett County), 21502.

_Darcele A. Jones_

Darcele A. Jones, Special Agent
Federal Bureau of Investigation

6

14-1753 TJS

Subscribed and sworn to before me this 5th day of August, 2014

Timothy J. Sullivan
United States Magistrate Judge
for the District of Maryland

14-1753TJS



IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | |
|---|---|
| )  | Search Warrant No. 10 - 284 - M - 0 1 |
| IN THE MATTER OF THE SEARCH OF   ) | |
| BUSINESS KNOWN AS APEX CARE   ) | |
| PHARMACY DOING BUSINESSS AS   ) | |
| APEXONLINEPHARMACY.COM   ) | |
| 4047 MINNESOTA AVENUE NE   ) | **UNDER SEAL** |
| WASHINGTON, DC  20019   ) | |

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Gregg C. Domroe, being duly sworn, depose and state as follows:

### INTRODUCTION

(1)   I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to

the Washington Field Office, 601 4th Street NW, Washington, DC.  I have been a Special Agent

since December 10, 2003, and have been assigned to work White Collar Crime matters since that

time.  During my law enforcement career, I have participated in numerous investigations,

including investigations involving health care fraud, bank fraud, wire fraud, fraud against the

federal government, telemarketing fraud, and narcotics violations.  I have completed the 17-week

training program given by the FBI, which includes instruction in the investigation of various

criminal offenses, including theft, theft-schemes, fraud, and related acts.  I have served as an

affiant on multiple search and seizure warrants relating to white collar crime matters.

(2)  Based on the facts set forth in this affidavit, your affiant submits that there is

probable cause to believe that a search of the business of **APEX CARE PHARMACY, doing**

**business as APEXONLINEPHARMACY.COM, 4047 Minnesota Avenue NE, Washington,**

1

14-1753 TJS

DC 20019, which is described in greater detail in Attachment A to this search warrant application, will uncover the evidence, fruits, and/or instrumentalities described in Attachment B, relating to violations of money laundering statutes under Title 18 U.S.C. § 1956, illegal importation of drugs in violation of Title 21 U.S.C. § 952, 959, 950, the illegal distribution of controlled substances in violation of title 21 U.S.C. § 841 (a) and (b), mail fraud in violation of Title 18 U.S.C. § 1341 and wire fraud in violation of Title 18 U.S.C. § 1343.

(3) The facts set forth in this affidavit are based on my personal knowledge and review of records, documents and other physical evidence obtained during this investigation, as well as information conveyed to me by other law enforcement officials. All observations referenced in this affidavit that were not made by me were related to me by the person who made such observations. Unless specifically indicated, all conversations and statements in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements.

(4) This affidavit is not intended to include each and every fact relating to this investigation. This affidavit only sets forth those facts necessary to support probable cause to believe that kept and concealed within 4047 Minnesota Avenue NE, Washington, DC 20019, are evidence, fruits, and instrumentalities, relating to violations of money laundering statutes under Title 18 U.S.C. § 1956, illegal importation of drugs in violation of Title 21 U.S.C. § 952, 959, 950, the illegal distribution of controlled substances in violation of title 21 U.S.C. § 841 (a) and (b), mail fraud in violation of Title 18 U.S.C. § 1341 and wire fraud in violation of Title 18 U.S.C. § 1343.

14-1753TJS

## BACKGROUND ON INTERNET PHARMACEUTICAL DRUG TRAFFICKING

(5) This case involves the illegal distribution of prescription drugs through use of the Internet. This operation involved the use of an online "affiliate" website programs, which serve as the marketing mechanisms for the illicit sale of pharmaceuticals. The websites in this case were created by a pharmacy owner, who recruited his own physicians to further facilitate the distribution of the drugs. Internet drug trafficking schemes generally operate as follows: a customer seeking drugs online encounters a pharmaceutical marketing website; the customer selects the type, strength, and quantity of a drug of choice, then submits biographical, shipping, and payment information in the form of an online questionnaire; the site will generally redirect to a payment portal controlled by the organization to process the financial transaction through the organization's merchant accounts; the customer data is available via an administrative back-office server, allowing a physician to access and "approve" the order, which may or may not include a perfunctory telephone "consult" with a physician or other individual; a fulfillment pharmacy accesses the same administrative back-office server to download drug order data, pre-printed bottle and shipping labels; the pharmacy fills, packages and ships the order to the customer via commercial carrier; shipping costs are paid for by the organization.

(6) The DEA issued official guidance via Federal Register Notice dated April 27, 2001, regarding doctors prescribing controlled substances based on an online questionnaire. The notice states that "[u]nder Federal and state law, for a doctor to be acting in the usual course of professional practice, there must be a bona fide doctor/patient relationship" and furthermore, that "[c]ompleting a questionnaire that is then reviewed by a

3

doctor hired by the Internet pharmacy could not be considered the basis for a doctor/patient relationship."

(7) The Food and Drug Administration has issued consumer guidance on its website stating that customers who purchase drugs from websites acting outside of current state and federal laws serving as safeguards for protecting patients from the use of inappropriate or unsafe drugs are at risk for suffering life threatening adverse events. The Federal Food, Drug, and Cosmetic Act (FDCA) requires dispensation of certain drugs only with a valid prescription because they are not safe for use without supervision of a licensed health care professional.

(8) Several professional health care associations, including the American Medical Association, the Federation of State Medical Boards, and the National Association of Boards of Pharmacy have issued policy statements on illicit online pharmaceutical sales.. Their statements include the proposition that a physician who offers a prescription to a patient based solely on the basis of an online questionnaire without ever having examined the patient has generally not met an acceptable standard of medical care. Moreover, such practices pose an immediate threat to public health and safety as a patient could receive inappropriate medication and worsen an underlying, undiagnosed, serious medical condition.

(9) Moreover, on April 13, 2009, legislation became effective that amended the Controlled Substances Act (CSA), 21 U.S.C. Section 841 et seq., by adding several provisions to prevent the illegal distribution and dispensing of controlled substances via the Internet. Pertinent provisions are discussed below.

4

14-1753TJS

## FEDERAL AND STATE DRUG LAWS AND REGULATIONS

**Title 21, United States Code, Section 841**
**Unlawful distribution of controlled substances**

> (a) . . . [I]t shall be unlawful for any person knowingly or intentionally -- (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

> (b)(1)(E)(i) . . . in the case of any controlled substance in schedule III such person shall be sentenced to a term of imprisonment of not more than 10 years, and if death or seriously bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years, a fine not to exceed . . . $500,000 if the defendant is an individual . . . , or both.

**Title 21, United States Code, Sections 841(h) and 843(c)(2)(A)**
**Offenses involving distribution and dispensing of controlled substances by means of the**
**Internet**

**Section 841(h)**

> (1) In general
> It shall be unlawful for any person to knowingly or intentionally –

> > (A) deliver, distribute, or dispense a controlled substance by means of the Internet, except as authorized by this subchapter; or

> > (B) aid or abet . . . any activity described in subparagraph (A) that is not authorized by this subchapter.

> (2) Examples
> Examples of activities that violate paragraph (1) include, but are not limited to, knowingly or intentionally –

> > (A) delivering, distributing, or dispensing a controlled substance by means of the Internet by an online pharmacy that is not validly registered with a modification authorizing such activity . . . ;

> > (B) writing a prescription for a controlled substance for the purpose of delivery, distribution, or dispensation by means of the Internet in violation of section 829(e) . . . ;

> > (C) serving as an agent, intermediary, or other entity that causes the Internet to be used to bring together a buyer and seller to engage in the

5

dispensing of a controlled substance in a manner not authorized by
sections 823(f) . . . or 829(e) . . . ;

(D) offering to fill a prescription for a controlled substance based solely on
a consumer's completion of an online questionnaire; and

(E) making a material false, fictitious, or fraudulent statement or
representation in a notification or declaration under subsection (d) or (e),
respectively, of section 831 . . . .

**Section 843(c)(2)(A)**

It shall be unlawful for any person to knowingly or intentionally use the Internet,
or cause the Internet to be used, to advertise the sale of, or to offer to sell,
distribute, or dispense, a controlled substance where such sale, distribution, or
dispensing is not authorized by this subchapter or by the Controlled Substances
Import and Export Act.

**Title 21, United States Code, Section 829(e)**
**Prescriptions**

(1) No controlled substance that is a prescription drug as determined under the
Federal Food, Drug, and Cosmetic Act, 21 U.S.C. Section 301, et seq., may be
delivered, distributed, or dispensed by means of the Internet without a valid
prescription.

(2)(A) The term "valid prescription" means a prescription that is issued for a
legitimate medical purpose in the usual course of professional practice by

(i) a practitioner who has conducted at least 1 in-person medical evaluation of the
patient; or
ii) a covering practitioner.

(B)(i) As used in this section, the term "in-person medical evaluation" means a
medical evaluation that is conducted with the patient in the physical presence of
the practitioner, without regard to whether portions of the evaluation are
conducted by other health professionals.

(10)  The manufacture, distribution, and dispensing of drugs are governed in the United

States by the Federal Food, Drug, and Cosmetic Act ("FDCA"), the Controlled Substances Act

("CSA"), and other federal and state statutes and regulations.  Under the CSA, a prescription for

a controlled substance "must be issued for a legitimate medical purpose by an individual

6

practitioner acting in the usual course of professional practice." 21 C.F.R. § 1306.04(a).
Prescribing a controlled substance to a patient without having established a legitimate
doctor/patient relationship, or without having conducted a good faith medical examination of the
patient, is a violation of 21 U.S.C. § 841(a), and each prescription so authorized is a separate
illegal distribution. The responsibility for the proper prescribing and dispensing of controlled
substances rests with the prescribing practitioner, but a corresponding responsibility is placed on
the pharmacist who fills the prescription. 21 C.F.R. § 1306.04(a).

(11)  The evidence demonstrates that the websites in question have distributed controlled
substances. Fioricet is a combination drug of Butalbital, acetaminophen, and caffeine, and is
approved to treat tension headaches. Butalbital, a Schedule III controlled substance, is a
barbiturate, which is "habit-forming and potentially abusable," according to warnings in the
Physicians' Desk Reference. Pursuant to 21 C.F.R. Section 1308.32, when Butalbital is
combined with a non-narcotic drug such as acetaminophen, it is exempt from certain provisions
of the CSA and its implementing regulations (mostly involving recordkeeping, reporting, and
registration), but not those provisions relating to the unlawful distribution of controlled
substances.

**Title 21, United States Code, Sections 331(a) and 333(a)**
**Introduction into interstate commerce of misbranded drugs**


**Section 331(a)**

> The following acts and the causing thereof are hereby prohibited:  (a) The
> introduction or delivery for introduction into interstate commerce of any
> food, drug, device, or cosmetic that is adulterated or misbranded.

7

14-1753TJS

**Section 333(a)**

> (1) Any person who violates a provision of section 331 of this title shall be imprisoned for not more than one year or fined not more than $1,000, or both.
> (2) . . . if any person commits such a violation . . . with the intent to defraud or mislead, such person shall be imprisoned for not more than three years or fined not more than $10,000, or both.

(12)  The FDCA prohibits the introduction of a misbranded drug into interstate commerce. 21 U.S.C. § 331(a).  The term "drug," as defined in the FDCA, includes articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or to affect the structure of any function of the human body. 21 U.S.C. § 321(g)(1).  Some drugs intended for use by humans can be dispensed only upon the valid and lawful prescription of a licensed practitioner.  A drug is a prescription drug, if among other things, "because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, [it] is not safe for use except under the supervision of a practitioner licensed by law to administer such drug." 21 U.S.C. § 353(b)(1).  A prescription drug dispensed without a valid prescription of a medical practitioner licensed by law to administer the drug is considered "misbranded." Id.

(13)  What constitutes a valid prescription, for purposes of the FDCA, is defined by state law. In December 2006, the District of Columbia passed legislation setting forth the description of a valid prescription and banning the operation of internet pharmacies.  Title 22 D.C. Code Chapter 13 (2006).  That section provides, in pertinent part:

1300.7: Prior to dispensing a prescription, pharmacists shall determine, in the exercise of sound professional judgment, that the prescription is a valid prescription. A pharmacist shall not dispense a prescription if the pharmacist knows that the prescription was issued without a valid patient-practitioner relationship.

1300.8: An internet based or telephone consultation or questionnaire evaluation is not adequate to establish a valid patient-practitioner relationship.....

(14) Therefore, the dispensing of drugs through an internet site in the District of Columbia on the basis of an online questionnaire, without any examination by a physician, is illegal. Many other states have similar restrictions on physicians and pharmacists. Because the targets in this case enable drugs to be dispensed without a valid prescription, their conduct violates the FDCA by causing misbranded drugs to be introduced into interstate commerce.

(15) Soma (or Carisiprodol) is a prescription drug, as is Fioricet. Both of these drugs have been offered for sale on Apexonlinepharmacy.com and sent to customers, despite the absence of a valid prescription. Soma is a centrally acting muscle relaxant; according to the DEA, its abuse has escalated in the past decade. Fioricet is a combination drug of Butalbital, acetaminophen, and caffeine, and is approved to treat tension headaches. Butalbital, a Schedule III controlled substance, is a barbituate, which is "habit-forming and potentially abusable," according to warnings in the Physicians' Desk Reference. Soma is included on DEA's list of Drugs and Chemicals of Concern, but is a legend drugs (i.e., drugs which require a prescription), not a federally controlled substance. See www.deadiversion.usdoj.gov/drugs_concern/index.html. On November 17, 2009, the DEA published a Notice of Proposed Rulemaking seeking to have Carisoprodol classified as a Schedule IV drug. Vol 74 Federal Register 220 (November 17, 2009).

9

14-1753TJS

**Title 18, United States Code, Section 1341**
**Mail Fraud**

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, . . . [uses the U.S. Postal Service or commercial interstate carrier], shall be . . . imprisoned not more than 20 years . . . .

**Title 18, United States Code, Section 1343**
**Wire Fraud**

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be . . . imprisoned not more than 20 years . . . .

**Title 18, United States Code, Section 1956**
**Money Laundering**

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts . . . a financial transaction . . . with the intent to promote the . . . unlawful activity . . . [or] to conceal or disguise the . . . location, the source, the ownership, or the control of the proceeds . . . shall be sentenced to . . . imprisonment for not more than twenty years[.]

Here, the evidence obtained pursuant to the 2703(d) order shows that Akinyoyenu and others at Apex Pharmacy have used the United States mail and private interstate carriers, emails, telephone and faxes to facilitate the fraudulent scheme to distribute controlled substances in violation of 21 U.S.C. Section 841, and to introduce misbranded drugs into interstate commerce in violation of 21 U.S.C. Sections 331 and 333. The evidence obtained to date further shows that

10

14-1753TJS

Akinyoyenu and other co-conspirators have conducted financial transactions throughout the course of this conspiracy in violation of 18 U.S.C. Section 1956.

## SUMMARY OF THE PERTINENT FACTS

(16)  APEX CARE PHARMACY, a subsidiary of MATRIX Corporation, is located at 4047 Minnesota Avenue NE, Washington, D.C., 20019.  The registered owner of MATRIX Corporation is Titilayo Akinyoyenu.  APEX CARE PHARMACY also operates an internet pharmacy under the name APEXONLINEPHARMACY.COM operated out of the same business location.  A review of this web site reveals that APEXONLINEPHARMACY.COM offers non-scheduled prescription medication for ailments ranging from pain relief to anxiety.

(17)  Your affiant, Special Agent Gregg C. Domroe, conducted a query of the registration information for APEXONLINEPHARMACY.COM and found that it the website was established on January 18, 2005.  The registration contact for the website is Tomi Akinyoyenu, with the 4047 Minnesota Avenue NE, Washington, D.C., 20019.  That address is location of APEX CARE PHARMACY.

(18)  Titilayo Akinyoyenu, also known as Tomi Akinyoyenu, is a licensed pharmacist in the District of Columbia. His license expires February 28, 2011.  Your affiant believes records related the ordering, fulfillment and shipping of pharmaceutical drugs for APEXONLINEPHARMACY.COM are present at the business location of APEX CARE PHARMACY, 4047 Minnesota Avenue NE, Washington, DC 20019 because the DC Municipal Regulations for Pharmacies imposes record keeping requirements upon pharmacies.

11

(19) **Title 22, Chapter 19, Sub-Section 1913.4 (Recordkeeping),** provides:

A pharmacy shall keep a chronological record, for a period of five (5) years from the date of first dispensing, of each prescription that is filled or refilled including the following information:

   (a) The name and address of the patient;

   (b) The name and address of the prescriber and date prescribed;

   (c) The name, strength, dosage form, and quantity of the drug prescribed, and quantity dispensed if different from quantity prescribed.

   (d) The name of the manufacturer of the drug if it is a substitute or generic drug for the drug actually prescribed or filled initially;

   (e) Directors for use;

   (f) The date the prescription was compounded, dispensed, or refilled;

   (g) The name or initials of the pharmacist responsible for final verification of the prescription order;

   (h) The prescriber's Drug Enforcement Administration (DEA) number and District of Columbia Controlled Substances number when required by law or regulation;

   (i) The expiration date of the drug dispensed;

   (j) Any change or alteration made to the prescription dispensed based on contact with the practitioner to show a clear audit trail. This shall include, a change in quantity, directions, number of refills, or authorization to substitute a drug; and

   (k) Any other information required by District of Columbia or federal law or regulations.

   (20) The APEXONLINEPHARMACY.COM web-site provides the following

disclaimer: "Apexonlinepharmacy.com does not prescribe medication directly, a physician has

the ultimate authority to diagnose a medical condition and discuss options. All orders require a

prescription from your physician or a medical professional that is licensed in the United States to

prescribe medication."

   (21) On August 27, 2007, Special Agent Gregg C. Domroe met with a representative of

the District of Columbia Department of Health Pharmacy Board (hereinafter, "the Board")

12

regarding APEX Care Pharmacy and APEXONLINEPHARMACY.COM.  Special Agent

Domroe was advised that in December of 2006, the District of Columbia instituted legislation

banning District of Columbia pharmacies from dispensing medication solely based on an on-line

questionnaire.  (D. C. Code, Title 22, Chapter 1300.8 (2006)).

   (22)  In April of 2007, a representative of the Board met with Akinyoyenu and advised

him that his operation of an internet pharmacy with prescriptions issued solely based on an on-

line questionnaire was in violation of D.C. regulations.  The representative directed Akinyoyenu

to provide the Board with copies of all prescriptions filled by

APEXONLINEPHARMACY.COM between January 2007 and April 2007.

   (23)  During the second quarter of 2007, Akinyoyenu provided the Board with

approximately 1,000 on line prescriptions filled by APEXONLINEPHARMACY.COM.  An

analysis of the documentation show that the on line prescriptions were filled for patients who

were located throughout the United States.  In addition, all of the on line prescriptions, with the

exception of twelve (12), were allegedly issued by a Dr. Alan Saltzman.[1]  The most commonly

dispensed medications were Carisiprodol (Soma), and Fioricet.  Fioricet contains Butalbital, a

Schedule III controlled substance.  Both Soma and Fioricet require a prescription.  A review of

Federal Express records reflects that APEXONLINEPHARMACY.COM has shipped over

60,000 packages between 2007 and 2009 to various locations in the United States.  The

---

[1] Both Florida and Pennsylvania have sanctioned Dr. Saltzman for his prescribing practices.  In March 2008, the Florida Board of Osteopathic Medicine suspended Saltzman's license to practice for 5 months and placed him on probation for 5 years for authorizing prescriptions for an internet pharmacy.  Saltzman then obtained a license in Pennsylvania, listing an address that is a P.O. box at Media Pack Ship and Company in Media, Pennsylvania. In March of 2009, Saltzman's Pennsylvania license was placed on probationary status as a result of the disciplinary action taken against him in Florida.

13

14-1753TJS

origination address for those packages was 4047 Minnesota Avenue NE, Washington, D.C., 20019, the address of APEX CARE PHARMACY.

(24) Special Agent Domroe and other investigators conducted approximately sixty (60) interviews of person who ordered drugs from APEXONLINEPHARMACY.COM throughout the United States between 2007 and 2009. Those individuals uniformly indicated that they each completed an online application found on the website APEXONLINEPHARMACY.COM, selected the drug or drugs from a list provided on the site, and entered credit card data for the purchase. None of the purchasers interviewed were required to provide a current prescription for the drug ordered. Shortly after the order was placed, the recipients received their medication through shipping companies such as FedEx and UPS.

(25) The majority of the individuals recalled that Dr. Alan Saltzman's name was listed as the prescribing physician. However, all of the individuals confirmed that they have never seen nor communicated with Dr. Saltzman to obtain a prescription for the ordered drugs or for any medical treatment. Thus, Dr. Saltzman does not have a valid doctor/patient relationship with any of these individuals, and APEXONLINEPHARMACY.COM's filling of those prescriptions based on nothing more than their completion of a questionnaire posted on a website violates D.C. Code and applicable provisions of Title 21 of the U.S. Code Section 841.

(26) In June of 2008, a cooperating witness initiated an order through APEXONLINEPHARMACY.COM for a refill of SOMA, the name brand version of Carisoprodol. The witness paid for the order with a credit card. Shortly after placing the order, the witness received a confirmation email from noreply@apexonlinepharmacy.com, affirming the order had been received. The following day, the witness received a second email from

14

14-1753TJS

service@apekonlinepharmacy.com which provided an order number and a Fed Ex tracking number. The following day, a package was received via Fed Ex contained pills which appeared to be SOMA.

(27)  In December of 2008, a cooperating witness placed an online order through APEXONLINEPHARMACY.COM for SOMA. The individual logged onto the APEXONLINEPHARMACY.COM web-site, selected SOMA and quantity, and purchased the drug using a credit card. The cooperating witness had never previously talked to a physician regarding the order. Shortly after the transaction was complete, the cooperating witness received an email confirmation of the order from noreply@apexonlinepharmacy.com that acted as an approval notice, and also provided shipping information and a tracking number for delivery via Federal Express.

(28)  Within a few days, a package addressed to the cooperating witness was received via FedEx. The return address on the package was 4047 Minnesota Avenue NE, Washington, DC 20019. The label on the pill bottle containing the ordered material read APEXONLINEPHARMACY.COM, and provided the name of APEX CARE PHARMACY and its Minnesota Avenue NE address. The drugs received by the cooperating witness in this shipment were subsequently analyzed by the Forensic Chemistry Center of the Food and Drug Administration and found to be consistent with Carisoprodol.

(29)  In June of 2009, another cooperating witness placed an online order through APEXONLINEPHARMACY.COM for Fioricet and Viagra. The individual logged onto the APEXONLINEPHARMACY.COM web-site, selected the drugs and quantities, and then purchased the drugs using a credit card. The cooperating witness had never previously been

15

14-1753TJS

prescribed either of the drugs and had never spoken to a physician regarding the order. Shortly after the transaction was complete, the cooperating witness received an email confirmation of the order from noreply@apexonlinepharmacy.com. The cooperating witness also received an email from service@apelonlinepharmacy.com indicating that the package had been shipped and providing a FedEx tracking number. The cooperating witness' credit card statement showed a charge for the amount of the ordered drugs from "APEXONLINEPHARMACY."

(30) Within days, the ordered drugs were received via Federal Express. The shipping address on the package was 4047 Minnesota Avenue, NE, Washington, DC 20019. The pill bottles both bore the name APEX CARE PHARMACY with the Minnesota Avenue NE address, and the web address of www.apexonlinepharmacy.com. The telephone number of 888-804-2739 also appears next to the name APEX CARE PHARMACY. The drugs were subsequently analyzed by the Forensic Chemistry Center of the Food and Drug Administration and found to be Fioricet and Viagra.

(31) Investigation has revealed that the telephone number of 888-804-2739 is associated with both APEXONLINEPHARMACY.COM, and with BYNEXTDAY.COM. The website for BYNEXTDAY.COM web-site lists a contact address for the company as 4047 Minnesota Avenue NE, Washington, D.C., 20019, the address for Apex Care Pharmacy and the registration address listed for APEXONLINEPHARMACY.COM.

## BANK ACCOUNT REVIEW

(32) Your affiant identified that APEXONLINEPHARMACY.COM was utilizing First National Merchant Solution, a subsidiary of the First National Bank of Omaha, 1620 Dodge Street, Omaha, NE 68197, to process the online pharmacy credit card transactions. The First

14-1753TJS

National Merchant Solution merchant profile lists the company billing name as MATRIX

CORPORATION, 4047 Minnesota Avenue NE, Washington, DC 20019. The merchant profile

lists a doing business as name as being APEXONLINEPHARMACY.COM. The account

ownership is listed to that of Titlayo Akinyoycno, social security number          . The

name on the account was misspelled, as the social security number belongs to Titilayo

Akinyoyenu. The account was initiated in May of 2005. Between 2006 and 2009, over

$8,000,000 was accepted in credit card transactions into this account.

(33)  Your affiant identified accounts listed in the name of

APEXONLINEPHARMACY.COM at Wachovia Bank. The account application identifies the

owner and president of APEXONLINEPHARMACY.COM as Titlayo Akinyoyenu. Your

affiant conducted an account review and determined that the majority of all deposits into this

account came from credit card transactions from American Express, Discover Card and various

other bank cards.

(34)  Your affiant conducted a review of all outgoing wire transfers in the

APEXONLINEPHARMACY.COM Wachovia bank account and found that between August

2006 and June of 2009 checks totaling $120,732.50 were payable to Dr. Alan Saltzman.

## 2703(D) SEARCH WARRANTS

(35)  On April 9, 2010, Magistrate Deborah Robinson issued a 2703(d) search warrant to

receive e-mail data stored at Everyone.Net Inc. for the business e-mail account

service@apexonlinepharmacy.net. Your affiant reviewed the e-mail data produced pursuant to

that warrant and found that APEXONLINEPHARMACY.COM was accepting prescription

14-1753TJS

orders up until the day that the data was provided. The data was provided to the FBI on April 13, 2010.

(36) The e-mail account for service@apexonlinepharmacy.net was broken down into multiple organizational folders. One of the folders was marked "FedEx". Your affiant reviewed this folder and found that it contained customer notifications regarding the prescription shipping number. The last FedEx notifications were dated April 12, 2010. Below is a summary of some of the FedEx packages shipped by APEXONLINEPHARMACY.COM on April 12, 2010:

| | |
|---|---|
| Customer: | A. Goldberg |
| Shipping Number: | 791525412808 |
| Shipping Date: | April 12, 2010 |
| Originating City: | Washington, DC |
| Package Delivery Date: | April 15, 2010 |
| Delivery City: | Medford, MA |
| | |
| Customer: | E. Siddell |
| Shipping Number: | 792824566062 |
| Shipping Date: | April 12, 2010 |
| Originating City: | Washington, DC |
| Package Delivery Date: | April 13, 2010 |
| Delivery City: | Ocala, FL |
| | |
| Customer: | R. Pickel |
| Shipping Number: | 792824566100 |
| Shipping Date: | April 12, 2010 |
| Originating City: | Washington, DC |
| Package Delivery Date: | April 13, 2010 |
| Delivery City: | Ocala, FL |

(37) The e-mail account for service@apexonlinepharmacy.net was broken down into multiple organizational folders. One of the folders was marked "Orders". Your affiant reviewed the documentation and found the following orders associated with the FedEx shipping information listed above:

18

14-1753TJS

| Customer: | A. Goldberg |
|---|---|
| Product Order: | Fioricet 50MG (Blue) |
| Product Quantity: | 120 tablets |
| Product Price: | $109.00 |
| Shipping Cost: | $25.49 |

| Customer: | E. Siddell |
|---|---|
| Product Order: | Fioricet 50MG (Blue) |
| Product Quantity: | 120 tablets |
| Product Price: | $109.00 |
| Shipping Cost: | $26.32 |

| Customer: | R. Pickel |
|---|---|
| Product Order: | Soma 350MG-Generic |
| Product Quantity: | 180 tablets |
| Product Order: | Fioricet 50MG (Blue) |
| Product Quantity: | 120 tablets |
| Order Price: | $283.00 |
| Shipping Cost: | $26.32 |

(38)   A review of records obtained pursuant to the Apexonlinepharmacy.com 2703(d)

order shows that these three individuals placed repeated orders for drugs without a prescription.

For example, between October 15, 2009 and April 12, 2010, A. Goldberg received 7 shipments

of Fioricet (120 50 Miligram tablets), and E. Siddell received 10 shipments of Fioricet (120 50

Milligram tablets) between October 12, 2008 and April 12, 2020.  R. Pickel, and others at her

residence, received 5 orders of Soma (180 350 Milligram tablets) and 5 orders of Fioricet (180

50 Milligram tablets) between Octrober 1, 2009 and April 12, 2010.  This pattern is replete

throughout the data, indicating that Apex fills customers' orders for controlled substances and

other prescription drugs on demand and often before a refill would be authorized.

19

14-1753TJS

## FACTUAL DETAILS IN SUPPORT OF PROBABLE CAUSE ELABORATED

(39) Your affiant and other agents conducted interviews of individuals who were identified as having purchased drugs from the apexonlinepharmacy.com website from documents provided by Akinyoyenu to the D.C. Board of Pharmacy in April, 2007. These interviews demonstrate that apexonlinepharmacy.com facilitates the distribution of drugs to individuals who had no doctor/patient relationship with Dr. Alan Saltzman, and no prescriptions for the drugs. A summary of some of those individuals and their purchase histories appear below:

**Prescription Recipient(s):**   John Michael Jones Jr. and David Elfstrom
**Address:**                                                      Avenue, Apartment        , Dallas, TX
**Number of Shipments:**   50 shipments between 10/30/2006 and 4/17/2008
**Listed Physician:**           Alan Saltzman

**Note:** One of the prescriptions collected by the Department of Health from Apex was for Jones and contained Saltzman's name as the alleged prescribing physician.

**Statements:** Jones and Elfstrom reside together. Both went online and completed the applications through APEXONLINEPHARMACY.COM. Both selected APEX as it was cheaper and more convenient than going to their local pharmacy. Elfstrom was ordering Tramadol (which is a drug used to treat chronic pain and is available by prescription only) and Soma and Jones was ordering Soma. Neither had a prescription for the medication ordered; they merely filled out an online questionnaire, paid with their credit cards, and received their drugs via Fed Ex. Neither Jones nor Elfstrom had ever spoken to nor seen Dr. Alan Saltzman. Jones did not recognize Saltzman's name, although Elfstrom said it sounded familiar. Jones and Elfstrom collectively received between 2 and 3 packages from APEX per month. Their purchase histories, and corresponding payments to Saltzman, appear below:

20

14-1753TJS

| FedEx Shipping Number | Shipping Date | Saltzman Payment Date / Amount |
|---|---|---|
| 790495229014 | 4/17/2008 | 4/28/2008 - $2,936.50 |
| 791404076185 | 10/4/2007 | 10/12/2007 - $3,531.50 |
| 791340915492 | 7/11/2007 | 7/16/2007 - $5,096.00 |
| 790218643221 | 4/5/2007 | 4/9/2007 - $5,887.00 |

**Prescription Recipient(s):**   Jeffrey Paul Burns / Linda Burns

**Address:**                                    . Drive, Orlando, FL

**Number of Shipments:**       28 shipments between 11/20/2006 and 3/20/2008

**Listed Physician:**                Alan Saltzman

**Note:** One of the prescriptions collected by the D.C. Board of Pharmacy Health from Apex was for Linda and contained Saltzman's name as the alleged prescribing physician.

**Statements:** Jeffrey and Linda Burns both utilize Soma to relieve their back pain. The Burns started using APEX in November of 2006 when their family physician informed them that she would no longer prescribe Soma or similar drugs because of the potential for overuse of narcotics by patients and the liability associated with prescribing drugs. Jeffrey went online and completed the online applications. No prescription was required for Linda and Jeffrey to obtain the Soma from APEX. They never saw a physician related to their APEX requests. Jeffrey advised that he has never heard of Dr. Alan Saltzman.

| Fed Ex Shipping Number | Shipping Date | Saltzman Payment Date / Amount |
|---|---|---|
| 791485309072 | 1/28/2008 | 2/12/2008 - $3,703.00 |
| 791419625735 | 10/25/2007 | 11/9/2007 - $3,804.50 |

21

14-1753TJS

| 790273507143 | 6/19/2007 | 6/25/2007 - $5,292.50 & $1,926.50 |
| 791233956123 | 2/16/2007 | 2/17/2007 - $6,142.50 |

**Prescription Recipient(s):**   Dawn Marie Lewis

**Address:**                                           Road,              Orange, California

**Number of Shipments:**   11 shipments between 1/16/2007 and 11/16/2007

**Listed Physician:**          Alan Saltzman

**Note:** One of the prescriptions collected by the DC Board of Pharmacy from Apex was for Lewis and contained Saltzman's name as the alleged prescribing physician.

**Statements:** Lewis advised that she had learned about APEX approximately 5 years ago, but did not recall from where. Due to the higher cost at local pharmacies and the benefit that the prescription would be delivered to her house, Lewis opted to go through APEX. She chose APEX since it was one of the sites that listed Soma cheaper than others. . Lewis completed an online application and requested Soma for back pain. A prescription was not required to purchase the Soma through APEX. Lewis did not recognize the name Alan Saltzman. Lewis believed the information listed in her online application would be reviewed by a physician.

| Fed Ex Shipping Number | Shipping Date | Saltzman Payment Date / Amount |
| --- | --- | --- |
| 798281956792 | 10/9/2007 | 10/12/2007 - $3,531.50 |
| 791363685080 | 8/10/2007 | 8/13/2007 - $5,873.00 |
| 798170758951 | 5/9/2007 | 5/10/2007 - $5,533.50 |
| 798547290360 | 4/9/2007 | 4/9/2007 - $5,887.00 |

22

14-1753TJS

**Prescription Recipient(s):**   Julie Edwards Mertz

**Address(es):**                          Drive, Apartment        Lexington,  KY

                                                    , Lexington, KY

**Number of Shipments:**       86 shipments between 8/17/2006 and 3/16/2009

**Note:** Mertz was selected based on the total number of shipments to her house in the names of
Sarah Mertz, Julie Mertz, John Mertz, and Phyllis Edwards at two (2) different addresses in
Lexington, KY.

**Statements:** Julie Mertz advised that she is a registered nurse working in the maternity ward of
St. Joseph's Hospital in Lexington, KY.  Approximately four (4) years ago, Mertz began
obtaining Ultram (a trade name for the generic pain killer medication known as tramadol HCl,)
through APEX after receiving an unsolicited advertisement through her e-mail.  Mertz advised
that she has not used any other on-line pharmacies.  She started using APEX because she could
acquire more than a 30 day supply at one time and it was cheaper ordering the medication online.
Mertz completed an online questionnaire which asked about her general health.  Mertz advised
that APEX did not require a prescription for on-line orders.  Ultram is a drug available through
prescription only. .  However, if the prescription time had not run out, APEX would not allow
her to re-order.  For this reason, Mertz started ordering Ultram in the name of her three children
(Sarah Mertz (14), Tyler Mertz (9) and Clay Mertz (7).  Mertz advised that she was also ordering
medication in the name of her ex-husband (John Mertz) and her mother (Phyllis Edwards).
APEX never provided a doctor to prescribe her medication.  Mertz advised that she never heard
of Dr. Alan Saltzman.

| Fed Ex Shipping Number | Date | Saltzman Payment Date / Amount |
|---|---|---|
| 798091658050 | 3/16/2009 | 4/10/2009 - $2,366.00 |
| 798066772548 | 12/8/2008 | 12/11/2008 - $2,163.00 |
| 790624309496 | 11/12/2008 | 11/14/2008 - $2,180.50 |
| 798866263416 | 2/4/2008 | 2/12/2008 - $3,703.00 |

23

The juxtaposition of the drug shipments by Apex and the subsequent payments to Dr. Saltzman by Apex (as opposed to payment by the customer who actually purchased the drugs) undermine the notion that a normal doctor – patient relationship existed in the situations set forth above. Instead, they demonstrate that Apex and Dr. Saltzman have, first and foremost, a financial arrangement that does not constitute a legitimate doctor-patient relationship necessary for the issuance of prescriptions for medication.

(40) A review of information obtained from Apexonlinepharmacy.com also shows that other physicians were used to authorize the issuance of prescription drugs to customers. Two of these physicians are known to law enforcement as having been involved in illegal internet pharmacy operations. One physician pled guilty to a violation of 21 U.S.C. Section 841 for his role in a conspiracy to dispense controlled substances outside the usual course of professional practice and is currently incarcerated.

(41) Law enforcement agents recently interviewed Dr. Saltzman in connection with his suspected involvement in another internet pharmacy case in the Eastern District of Pennsylvania. Dr. Saltzman invoked his right to counsel and refused to cooperate with agents. Your affiant believes that Dr. Saltzman may well contact his associates at Apex Pharmacy and alert them of these recent developments, which could lead to the destruction or removal of evidence by Akinyoyenu and others at Apex Pharmacy.

## ELECTRONIC EVIDENCE

(42) Your affiant knows that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two (2) distinct and

24

14-1753TJS

important aspects: (a) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (b) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are instrumentalities, fruits, or evidence of crime, or storage devices for information about crime.

(43) Based upon the facts set forth above, there is probable cause to believe that computer hardware, software, related documentation, passwords, data security devices (as described below), and data that may be found at the business of APEX CARE PHARMACY, doing business as APEXONLINEPHARMACY.COM, were integral tools of these crimes and constitute the means of committing it. As such, they are instrumentalities and evidence of the violation designated. Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time, and to examine, analyze, and test them. It is the intent of the Agents to copy the electronic evidence at the search site (by creating a "mirrored" image of the data). If this copying cannot be accomplished, then the procedures outlined in paragraphs 50 to 57 will be followed:

(44) <u>Hardware:</u> Computer hardware consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Hardware includes, but is not limited to, any data processing devices (such as central processing units); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, and other memory storage devices); and related communications devices (such as cables and connections), as well as any devices,

25

mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

(45) Software:  Computer software is digital information that can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored electronic, magnetic, or other digital form, including zip drives.  It commonly includes programs to run operating systems, applications (like tax preparation, word-processing, or spreadsheet programs), and utilities.

(46) Passwords and Data Security Devices:  Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, and other programming code.  A password (a string of alphanumeric characters) usually operates a sort of digital key to unlock particular data security devices.  Data security hardware may include programming code that creates test keys or hot keys, which perform certain preset security functions when touched.  Data security software or code may also encrypt, compress, hide, or booby-trap protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

(47)  Based upon my knowledge, training and experience, and consultation with computer specialists from the FBI, your affiant knows that searching and seizing information from computers almost always requires agents to seize most or all electronic storage devices (along with related peripherals, as discussed below) to be searched later by a qualified computer expert in a laboratory or other controlled environment.  This is true because of the following:

26

*14-1753TJS*

(48) <u>Volume of Evidence:</u>  Computer storage devices (like hard disks, and diskettes) can store the equivalent of thousands of pages of information.  Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime.  This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

(49) <u>Technical Requirements:</u>  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data.  However, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (either from external sources or from destructive code imbedded in the system as a booby-trap), a controlled environment is essential to its complete and accurate analysis.

(50)  Based upon my knowledge, training and experience and consultation with forensic computer examiners, your affiant knows that searching computerized information for evidence or instrumentalities of crime commonly requires Agents to seize most or all of the computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the

27

14-1753TJS

system's data in a laboratory or other controlled environment.  This is true because of the following:

(51) The peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software.  Many system storage devices require particular input/output (or "I/O") devices in order to read the data on the system.  It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above.  In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

(52) If, after inspecting the I/O devices, software, documentation, and data security devices, the analyst determines that these items are no longer necessary to retrieve and preserve the data evidence, the government will return them within a reasonable time period.

(53) Data analysts may use several different techniques to search electronic data for evidence or instrumentalities of crime.  These include, but are not limited to, the following: examining file directories and subdirectories for the lists of files they contain; opening or reading the first few pages of selected files to determine their contents; scanning for deleted or hidden data; searching for key words or phrases ("string searches").

28

(54) This specifically excludes a search of any kind of unopened electronic mail, or no warrant is herein sought for such unopened electronic mail. If unopened electronic mail is to be searched, a separate warrant will be sought supported by probable cause.

## CONCLUSION

(55) There is probable cause to believe that APEX CARE PHARMACY, doing business as APEXONLINEPHARMACY.COM and its employees knowingly and willfully executed or attempted to execute a scheme or artifice to distribute controlled and non-controlled substances without the need of a prescription or a legitimate doctor patient relationship.

(56) Based on the foregoing information and upon my training, and experience in the investigation of pharmaceutical drug diversion, I believe that fruits, instrumentalities and evidence, as described in the Attachment B, relating to violations of money laundering statutes under Title 18 U.S.C. § 1956, illegal importation of drugs in violation of Title 21 U.S.C. § 952, 959, 950, the illegal distribution of controlled substances in violation of title 21 U.S.C. § 841 (a)

14-1753TJS

and (b), mail fraud in violation of Title 18 U.S.C. § 1341 and wire fraud in violation of

Title 18 U.S.C. § 1343, will be located within 4047 Minnesota Avenue NE, Washington, DC

20019.

Special Agent Gregg C. Domroe
Federal Bureau of Investigation

**MAY 26 2010**
Subscribed and sworn to before me this _____ day of May, 2010

United States Magistrate Judge
**ALAN KAY**
**U.S. MAGISTRATE JUDGE**

30